The following cases were decided in December, 1851, and January and February, 1852, and from the circumstance that they were not reported by my predecessor, it is presumed that the action of the court had not become final at the time that he ceased to report. R.

## JOHN BLAFFER *v.* P. HERMAN.

Where the conduct of the first endorser of a note, was calculated and intended to induce the notary's clerk to make no further attempt to find the maker, and present the note for payment, and where he undertakes himself to have the money forthcoming, in an action against him, he cannot relieve himself from liability, on the ground that no presentment for payment was made on the maker.

APPEAL from the Fifth District Court of New Orleans. *Buchanan,* J. *C. Roselius*, for plaintiff. *F. Haynes*, for defendant. By the court :

SLIDELL, J. The defendant is sued as the endorser of a promissory note, made by *Helwig*. He resists the claim on the ground, that no demand was made of the maker. The note is dated in New Orleans ; but the maker resided in the adjoining town, Lafayette. No demand of payment was made of the maker. The protest, which was made by a New Orleans notary, at the request of the bank in which the plaintiff had lodged it for collection, states, that he made diligent inquiry for the drawer on the note, in order to demand payment thereof, particularly of the first endorser, who informed him, that the maker resided in the adjoining parish of Jefferson ; the said endorser promising, that said note would be paid the next morning.

The notary's clerk was examined at the trial, and testified, that he exhibited the note to the endorser, in the afternoon of the day of its maturity, who told him the maker lived in the parish of Jefferson, and also told him not to protest the note, and that he would go and see the maker, and settle the note the next morning. The testimony of the notary's clerk is corroborated by another witness, who said, that two or three days after the note fell due, the defendant told him that the notary had called upon him with the note, and that he told the notary, he would go and see the maker, and get him to pay it ; and that he did go to the maker for that purpose, and was very much surprised to find that he had not the money to pay the note.

It is obvious, that this course of conduct on the part of the endorser, was calculated, and was intended to induce the notary's clerk to make no further attempts to find the maker, and present the note for payment. And in this connection, we may observe, that there is little weight in the argument drawn,

from the fact, that the notary's official sphere of action was limited to the parish of Orleans; for he or his clerk, in their individual capacities, were competent to make a presentment out of the parish. This could have been accomplished in a half hour's walk to the neighboring town; or, upon notifying the bank, it could have sent a messenger there in season. Although it is usual to employ notaries to protest notes, it is not necessary to do so.

The general rule of the commercial law is undisputed. The endorser is liable, after due diligence by the holder, to obtain payment of the maker, and I notice that payment has not been made. These being conditions implied in the contract of endorsement, his liability depends upon their fulfillment. But, although such is the general rule, it is equally clear that he may waive, or modify privileges, which the law implies for his benefit. And when he so acts, as to manifest his willingness to waive them, and the holder may be fairly considered as having regulated his conduct accordingly, and as having abstained from doing what otherwise he might have done for his own protection, it would operate as a fraud upon the holder, if the endorser were afterwards permitted to avail himself of the omission.

In the present case, the defendant must be considered as having invited the holder to desist from further search for the maker, and to have undertaken to see the maker himself, and have the money forthcoming. *Quoties per eum, cujus interest conditionem non impleri, fiat quominus implea ur, perinde haberi ac si conditio impleta fuisset.* Leg. 161, ff. *de regulis juris.* Civil Code, 2035. *Lincoln* and *Kennebeck Bank* v. *Page,* 9 Mass. 157. *Barker* v. *Parker,* 6 · Pick. 82. *Boyd* v. *Cleveland,* 4 Pick, 524. Story on notes, §271.

The notarial fees of protest which the plaintiff claims, cannot be allowed. The notary may have thought it proper to spread upon his notarial record what had been done, in order to preserve for his employer authentic and permanent evidence under the statute. But to charge the defendant with the expense of doing so, would be in violation of the understanding between him and the notary.

It is therefore decreed, that the judgment of the district court be reversed; and that the plaintiff receive from the defendant the sum of $550, with interest at the rate of eight per cent per annum, from the 26th March, 1851, until paid, and costs in both courts; but without costs of protest.